**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

DEVERICK SCOTT                                                                      PLAINTIFF
ADC #131042

V.                                           NO: 5:14CV00346 DPM/PSH

RANDY WATSON *et al*                                                        DEFENDANTS


**PROPOSED FINDINGS AND RECOMMENDATION**

**INSTRUCTIONS**

The following Proposed Findings and Recommendation have been sent to United States

District Judge D.P. Marshall Jr.   You may file written objections to all or part of this

Recommendation.  If you do so, those objections must:  (1) specifically explain the factual and/or

legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14)

days of this Recommendation.  By not objecting, you may waive the right to appeal questions of

fact.

**DISPOSITION**

**I.  Factual Summary**

Plaintiff Deverick Scott, an Arkansas Department of Correction (ADC) inmate, filed a *pro

se* complaint on September 12, 2014 against defendants in their official and individual capacities.

Defendants are Varner Super Max Warden Randy Watson, ADC Director Wendy Kelley, ADC

Assistant Director Grant Harris, ADC Disciplinary Hearing Administrator Raymond Naylor, Varner

Super Max Assistant Warden Moses Jackson, Varner Super Max Correctional Officer Wardell

1

Brooks, East Arkansas Regional Unit Sergeant Everett G. Litzsey, Jr., and Varner Super Max Lt. James Plummer.

Much of this case stems from an event that took place at Varner SuperMax on November 27, 2013.  Plaintiff Deverick Scott, who was in punitive isolation, claims that defendants Litzsey, Brooks, and Plummer refused to provide him a breakfast meal tray, subjecting him to cruel and unusual punishment in violation of the 8th Amendment.  Scott claims that he was denied breakfast on that date in retaliation for grievances he wrote against Litzsey and others in mid-November 2013.[1]  The defendants assert that when breakfast trays were being handed out on that date, staff members could not fully see into Scott's cell because he had tied a sheet and clothing to his cell bars, obstructing the view.  The defendants state that ADC policy prohibits inmates from placing articles in cell bars, thus obstructing the view into a cell.  They also state that staff is prohibited from entering a cell unless there is a clear, unobstructed view of it.  This policy is for the protection of prison staff.

Defendant Litzsey ordered Scott to remove the items from the cell bars.  He claims Scott failed to comply, stating "Litzsey, stop being a police ass nigga, on my hood as soon as I get a blade imma stab yo bitch ass."  Doc. No. 48-10.  The defendants state that because Scott did not comply with the order, a meal tray could not be safely delivered.  Scott refutes these claims, stating he began

---

[1]Grievance VSM-13-4703 was submitted by Scott on November 14, 2013.  In it, Scott complained about only getting 7 minute showers.  See Doc. No. 48-2, pages 41-43.  The grievance was found to have no merit.  Grievance VSM-13-4702 was also submitted on November 14, 2013. Scott claimed that African Americans were discriminated against because they could not get decorative "lines" with haircuts and shaves.  Doc. No. 2, page 37.  This grievance was also found to have no merit.  *Id.*, page 38.   Litzsey is identified in the grievances as "Lessie" or "Lissie." Additionally, Scott claims Litszey retaliated against him on November 27, 2013 because Litzsey was placed on probation for failing to document a hunger strike he began in July 2013.

to remove the items blocking the view into the cell, but his meal was nonetheless refused.

As a result of these events, Litzsey issued Scott a major disciplinary for failure to keep his cell in accordance with regulations; threatening to inflict injury on staff; unauthorized use of state property; insolence to a staff member; failure to obey a verbal order of staff; and any act or acts defined as felonies or misdemeanors by the state of Arkansas. (Doc. No. 48-10). Scott was notified of the charges, which were referred for a disciplinary hearing after initial review. According to the defendants, Scott asked to call the "Max 4 logs" and Officer Brooks as witnesses for the hearing. (Doc. No. 48, page 10; Doc. No. 48-10). The disciplinary hearing took place December 9, 2013. Scott admitted not keeping his cell in accordance with regulations, and pleaded not guilty to the remaining charges. *Id.* According to the report documenting the hearing, Scott stated if he was convicted of the disciplinary charges, and no action was taken against Litzsey for refusing him a breakfast tray, "then there is going to be more blood shed." (Doc. No. 48-10, page 5).

The hearing officer found Scott guilty of all charges, relying on a staff eyewitness account, a statement from Litzsey, and a photograph of Scott's cell. *Id.*, page 6. It appears the staff eyewitness account was made by Brooks, and states "Disciplinary stand as written. I cannot be a witness for this inmate." *Id.*, page 9. Scott claims he appealed this decision. The defendants dispute that he appealed as required, and thus did not exhaust his administrative remedies.

Scott claims that defendants Kelley, Naylor, Harris, Watson, and Jackson violated his 14th Amendment due process rights with regard to the hearing. Specifically, he criticizes a policy that does not allow inmates to ask for video footage to be viewed at disciplinary hearings, and argues that video footage of the event in issue would support his version of events. He also criticizes these

defendants because the video footage was not reviewed by the hearing officer regardless of whether he sought its production.   Finally, he claims that his due process rights were violated because he was not allowed to confront and cross-examine adverse witnesses.   As a result of the major disciplinary, Scott received 30 days of punitive isolation, 60 days suspension on commissary, phone, and visitation privileges, and a reduction to Class IV.[2]   *Id.*, pages 5-6.

Finally, Scott claims that defendant Deputy Warden Jackson had him moved from a one man isolation cell to an isolation cell with mental health, supermax, and death row inmates on November 16, 2013, in retaliation for forming "The Black Bear Party."   (Doc. No. 2, pages 50-56).   Scott prepared a letter dated November 15, 2013 in which he outlined a number of concerns of inmates under the heading of "The Black Bear unity Party."   (Doc. No. 48-12, pages 3-9).   That letter was addressed to the ADC Director and others, and identified Jackson on the "reference" portion of the letter.   It states concerns about inmates having inadequate access to legal material, no access to yard call for exercise, not enough food on food trays,  lack of grooming supplies for African American inmates, receiving disciplinaries for masturbating, not receiving due process at disciplinary hearings, lack of visitation in the SuperMax and Ad-Seg, lack of rehabilitation, and inability to earn money. *Id.*

Defendants filed a motion for summary judgment, a statement of facts, and a brief in support on April 18, 2016 (Doc. Nos. 46-48).   Scott filed a response, a brief in support, and a statement of facts on May 2, 2016 (Doc. Nos. 49-51).   Defendants assert Scott failed to exhaust his administrative remedies with respect to his November 27, 2013, disciplinary charge, that his due process rights were not violated, that he cannot establish a conditions of confinement or retaliation claim, and that

---

[2]It appears that Scott was already a Class IV.  *See* Doc. No. 48-1.

4

they are entitled to sovereign and qualified immunity.  For the reasons set forth below, the Court recommends that the motion for summary judgment be granted.

## II.  Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.  Analysis

**Exhaustion.**  The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust available administrative remedies before filing suit in federal court.  42 U.S.C. §1997e(a).  This requirement allows a prison to "address complaints about the program it administers before being

subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). To satisfy the requirements of the PLRA, a prisoner must comply with the procedural requirements of the prison. *Id.*, at 218; *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)(administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). The exhaustion requirement applies to an ADC prisoner's challenge to an alleged false disciplinary. *See, e.g., Mills v. White*, Case No. 08-3511, 2010 WL 395309 (8th Cir. Feb. 5, 2010)(unpublished opinion); *Garrett v. Guy*, Case No. 1:13CV00110, 2014 WL 4662281 (E.D. Ark. 2014)(unpublished opinion).

The defendants claim that Scott failed to exhaust his administrative remedies with respect to his November 27, 2013, disciplinary charge because he did not comply with the ADC disciplinary appeals policy before filing this action. That policy provides for disciplinary appeals to be directed to the Warden/Center Supervisor, then to the Disciplinary Hearing Administrator, and then to the Director of the ADC (Doc. No. 48-11, page 3). Thus, to exhaust his claim related to the convictions on his disciplinary charges, Scott was required to attend the disciplinary hearing, appeal the disciplinary hearing officer's verdict to the Warden, appeal the Warden's ruling to the disciplinary hearing administrator, and appeal the disciplinary hearing administrator's ruling to the ADC Director, all within the time frames set forth in the policy.

Scott attended his disciplinary hearing. He was convicted of the November 27, 2013, disciplinary violations after that hearing by a non-party disciplinary hearing officer (Doc. No. 48-10). The defendants claim that Scott did not appeal as required. In support of their position, they rely on two memoranda from the ADC Director's office to Scott, both of which Scott attached to

6

his complaint as exhibits.  (Doc. No. 2, pages 29 & 30).  The defendants assert these memoranda demonstrate that Scott failed to follow prison procedure to appeal his disciplinary conviction.  The Court disagrees.  The first memorandum is dated December 18, 2013, and is from the ADC Director's Executive Assistant to Scott.  It indicates that Scott sent correspondence to the Director's office on December 9, the date of his convictions on the disciplinary in issue.  It further states "your disciplinary is still in the appeal process; meaning nothing can be done until the appeal process is over."  (Doc. No. 2, page 29).  It advises Scott of the steps he must take to complete the appeal process.  It further states that appeal to the Warden and Disciplinary Hearing Administrator had not been completed, and must be completed before appeal can be made to the Director.  *Id.*

The second memorandum is dated April 14, 2014, and is also from the ADC Director's Assistant regarding the disciplinary in issue.  It acknowledges receipt "of your disciplinary appeal regarding a major disciplinary you received on 11/27/2013."  (Doc. No. 2, page 30).  It further states "I find that you have not followed the proper major disciplinary appeal process....  After receiving your appeal answer from the Warden the next phase of the major disciplinary appeal process is the Disciplinary Hearing Administrator before appealing to this office.  If you do not agree with the Disciplinary Hearing Officer's decision, you may appeal back to this office."  *Id.*  Neither of these documents establish failure to exhaust.  Both advise Scott of the appeal process he needed to follow, and they do not indicate that Scott would be foreclosed from pursuing an appeal if he attempted to follow the advice given.  The defendants do not rely on any other evidence in support of their exhaustion argument.

The defendants have not met their burden of proving exhaustion as a matter of law, and the Court finds that the  motion for summary judgment on this issue should be denied.

**Qualified Immunity**.  The defendants claim they are shielded from liability from Scott's claims in their individual capacities by qualified immunity.  This immunity protects officials acting within the scope of their duties when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Courts consider two questions in determining if a defendant is entitled to qualified immunity: (1) whether the facts, construed in the light most favorable to the plaintiff, establish the violation of a constitutional right, and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson*, 555 U.S. at 236.  In considering whether the defendants are entitled to qualified immunity, the Court will first consider whether Scott has presented facts sufficient to show the violation of a constitutional right as to any of his claims, as discussed below.

### Due Process Violations - Kelley, Naylor, Harris, Watson, Jackson

Scott asserts the procedure followed in his disciplinary hearing violated his due process rights in several ways.  First, he was not allowed to ask for video footage to be viewed at the disciplinary hearing.  Second, he claims the hearing officer should have viewed the video footage, regardless of whether he sought its production. Finally, he claims that his due process rights were

violated because he was not allowed to confront and cross-examine adverse witnesses.  Defendants
Kelley, Naylor, Harris, Watson, and Jackson argue that Scott's due process claims should fail
because he was not deprived of any constitutionally protected liberty interest.  To establish
deprivation of a protected liberty interest, Scott must identify conditions of confinement that impose
an "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin
v. Conner*, 515 U.S. 472, 484 (1995).  As a result of his disciplinary conviction, Scott was sentenced
to 30 days of punitive isolation and a reduction in class, and lost 60 days of commissary, phone, and
visitation privileges (Doc. No. 48-10, pages 5 & 6).  These penalties do not amount to an "atypical
and significant" hardship that would give rise to due process protection as set forth in *Sandin*.

The Eighth Circuit has "consistently held that administrative and disciplinary segregation
are not atypical and significant hardships under *Sandin*." *Portly-El v. Brill*, 288 F.3d 1063, 1065
(8th Cir. 2002).  *See also Kennedy v. Blankenship,* 100 F.3d 640 (8th Cir. 1996)(30 days punitive
isolation and loss of telephone, visitation, commissary privileges not atypical and significant
hardships); *Wycoff v. Nichols*, 94 F.3d 1187, 1188-90 (8th Cir. 1996)(no liberty interest arose when
plaintiff served 45 days in administrative confinement before disciplinary decision reversed);
*Richardson v. Pevey et al.*, Case No. 5:12CV00096, 2012WL 1167086, recommendation adopted
2012 WL 1185977 (E.D. Ark. April 6, 2012) (unpublished opinion) (no protected liberty interest
when inmate served 30 days in punitive isolation and commissary, telephone, and visitation
privileges were suspended for 60 days).  Likewise, although it appears that Scott was already a Class
IV status before the disciplinary hearing, even if he lost his class status, he has no right to a
particular class status or early release based on good time or for any other reason.  *See Madewell v.
Roberts*, 909 F.2d 1203, 1207 (8th Cir. 1990)(noting that an inmate has no right to any particular

class status); *Strickland v. Dyer*, 628 F.Supp. 180, 181 (E.D. Ark. 1986)(finding that because Arkansas case law does not protect a prisoner's right to any particular classification and there is no federally protected right regarding classification, inmate could not prevail on claim that he was deprived of due process due to disciplinary penalty of two-step class reduction)*; Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979)(no fundamental right to parole).  Without a protected liberty interest, Scott's due process claims fail.

The Court notes that Scott did not name the disciplinary hearing officer as a defendant.  To the extent Scott's due process claims against defendants Kelley, Naylor, Harris, Watson, and Jackson are based on a theory of respondeat superior, they fail as well.  *See White v. Holmes*, 21 F.3d 277 (8th Cir. 1994).  Thus, any claim against the defendants based on failure to supervise the hearing officer do not support a constitutional claim.

For these reasons, the Court finds that the facts, construed in the light most favorable to the plaintiff, fail to establish the violation of a constitutional right.  Kelley, Naylor, Harris, Watson, and Jackson's motion for summary judgment on Scott's claims related to his disciplinary hearing should be granted.

### Conditions of Confinement - Litzsey, Brooks, Plummer

Scott alleges that the denial of his breakfast on November 27, 2013 amounted to an unconstitutional condition of confinement.  Defendants Litzsey, Brooks, and Plummer seek summary judgment on this claim.  To prevail on a condition of confinement claim, inmates must show: (1) the condition was serious enough to deprive them of the minimal civilized measure of life's necessities, or to constitute a substantial risk of serious harm, and (2) officials were deliberately indifferent to the inmates' health and safety.  *Smith v. Copeland*, 87 F.3d 265, 268 (8th

Cir.1996); *Frye v. Pettis County Sheriff Dept.*, 41 Fed.Appx. 906 (8th Cir. 2002)(unpub. per curiam).

Prisoners have a right to adequate nutrition, and failure to provide it may constitute deliberate indifference that violates the Eighth Amendment. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). However, considering the facts of this case, the denial of one meal on one occasion did not deprive Scott of the minimal civilized measure of life's necessities or constitute a substantial risk of serious harm. Thus, Scott's claim is insufficient to establish a constitutional violation. *See Williams v. Harness*, 221 F.3d 1346 (8th Cir. 2000) (unpublished per curiam) (denial of one meal does not give rise to constitutional violation ); *Berry v. Brady*, 192 F.3d 504, 506-08 (5th Cir.1999) (deprivation of food constitutes cruel and unusual punishment only if it denies prisoner minimal civilized measure of life's necessities, and whether deprivation falls below this threshold depends on amount and duration of deprivation; denying inmate eight meals over seven months because of inmate's failure to shave did not deny inmate "anything close to a 'minimal measure of life's necessities'" (internal quotations and citation omitted)). Accordingly, because Scott has not shown the violation of a constitutional right, his claims regarding the denial of his breakfast should be dismissed.

### Retaliation - Jackson, Litzsey, Brooks, Plummer

Scott claims Jackson violated his constitutional rights when he transferred Scott from one isolation cellblock to another on November 16, 2013 in retaliation for forming "The Black Bear Party." He also claims that Litzsey, Brooks, and Plummer refused him a meal on November 27, 2013 in retaliation for 2 grievances Scott wrote naming Litzsey in mid-November, and because Litszey was placed on probation for failing to document a hunger strike Scott began in July 2013.

The motion for summary judgment on these claims should be granted.

Cell transfer

As stated, Scott claims the cell transfer was retaliation for documents he submitted to the ADC Director and other officials regarding his forming the Black Bear Party the day before his transfer.   Scott is referring to a letter, dated November 15, 2013, and addressed to then-ADC Director Hobbs, Larry May, and Grant Harris (Doc. No. 2, pages 50-56).   The letter, which has previously been summarized, does not complain of any actions by Jackson, and Scott has offered no reason to explain why the letter would anger Jackson to the point he would transfer Scott in retaliation.

Jackson attached an affidavit in support of his summary judgment motion.  (See Doc. No. 48-12).   He states that he is a Deputy Warden for the ADC and was assigned to VSM in November 2013.   He has reviewed Scott's November 15, 2013 letter about the formation of the Black Bear Party.   Jackson states that he does not know what the Black Bear Party is; he does not remember seeing Scott's letter at any time before this lawsuit was filed; he did not know Scott had formed the Black Bear Party until after this lawsuit was filed; Scott's move from one isolation cell to another on November 16, 2013, was not related to the Black Bear Party; and he did not retaliate against Scott on November 16, 2013 in response to the letter.  *Id.*  Further, Jackson states that inmates are moved routinely for a number of reasons, including inmate needs, job changes, institutional needs, and for the safety and good order of the facility.   To the best of his memory, Scott's cell change on November 16, 2013 "was for institutional needs."   *Id.*   In support of his motion for summary judgment, Jackson also attaches a status assignment sheet, (Doc. No. 48-1), which documents that

Scott had a number of bed assignments in the year before the transfer he complains about.

An inmate claiming retaliatory transfer is required to meet a substantial burden of proving that the actual motivating factor in the transfer was in fact the impermissible retaliation. *See Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996); *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) (allegations of retaliation must be more than speculative and conclusory). A temporal connection alone is not enough to create a genuine issue of fact. *Kipp v. Missouri Highway and Transp. Com'n*, 280 F.3d 893 (8th Cir. 2002). In response to Jackson's motion for summary judgment, Scott failed to submit affirmative evidence of a retaliatory motive by Jackson related to the November 16, 2013 transfer. Scott's conclusory claims regarding his cell transfer cannot serve to establish a constitutional violation, and Jackson is therefore entitled to summary judgment.

Retaliatory disciplinary

An inmate can establish an actionable constitutional retaliatory discipline claim only if the disciplinary charges filed against him were false. "[I]f the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail." *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir. 1993). *See also Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994) (prison disciplinary committee's finding, based on corrections officer's description of events, that prisoner actually violated prison regulations essentially "checkmate[d]" prisoner's retaliation claim), cert. denied, 515 U.S. 1145 (1995). In *Hartsfield v. Nichols*, 511 F.3d 826, 829-31 (8th Cir. 2008), the Eighth Circuit stated that a defendant may successfully defend a retaliatory discipline claim by showing "some evidence" that the plaintiff inmate actually committed a rule violation. A report from a correctional officer, even if disputed by the inmate and supported by no other evidence,

13

legally suffices as "some evidence" upon which to base a prison disciplinary violation, if the violation is found by an impartial decision maker.  *Id.*  Applied to the facts of this case, the Court finds that some evidence supports the guilty findings of the disciplinary hearing officer. Scott admitted to one of the disciplinary charges.  As to the remaining charges, the hearing officer relied on a staff eyewitness account, a statement from Litzsey, and a photograph of Scott's cell in finding Scott guilty. Additionally, there is no evidence in the record to suggest that the disciplinary hearing officer was not impartial.  Scott cannot establish a violation of his constitutional rights related to his retaliatory discipline claim.  Litzsey, Brooks, and Plummer are therefore entitled to summary judgment on this claim.

## IV.   Conclusion

Scott has failed to present facts on each of his claims sufficient to show a violation of his constitutional rights, and this case should be dismissed with prejudice in its entirety. The defendants are entitled to qualified immunity.  The defendants are also entitled to sovereign immunity on all monetary claims against them in their individual capacities.  Finally, the Court's finding of no constitutional violation renders Scott's request for injunctive and declaratory relief moot, and those claims for relief should also be dismissed.

IT IS THEREFORE RECOMMENDED THAT:

1.      Defendants' motion for summary judgment (Doc. No.46) be GRANTED, and plaintiff Deverick Scott's complaint be DISMISSED WITH PREJUDICE.

2.      The Court certify that an *in forma pauperis* appeal taken from the order and judgment dismissing this action is considered frivolous and not in good faith.

14

DATED this 8th day of December, 2016.

_____

UNITED STATES MAGISTRATE JUDGE